**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | No. 06-CR-1020-LRR |
| vs. | | **ORDER** |
| TERRY TERRELL SAMUELS, | | |
| Defendant. | | |

_____

*TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*   *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*  *TRIAL EVIDENCE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *A.*   *Early 2006* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *B.*   *March 21, 2006 Controlled Buy.* . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *C.*   *The March 24, 2006 Controlled Buy* . . . . . . . . . . . . . . . . . . . . . *5*
    *D.*   *The March 28, 2006 Controlled Buy* . . . . . . . . . . . . . . . . . . . . . *6*
    *E.*   *Stipulations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*

*IV.*   *LEGAL STANDARDS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
    *A.*   *Motion for Judgment of Acquittal* . . . . . . . . . . . . . . . . . . . . . . . . *8*
    *B.*   *Motion for New Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*

*V.*    *DEFENDANT'S ARGUMENTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

*VI.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
    *A.*   *Motion for Judgment of Acquittal* . . . . . . . . . . . . . . . . . . . . . . . *10*
        *1.*   *Sufficiency of the evidence* . . . . . . . . . . . . . . . . . . . . . . . *10*
        *2.*   *The audio expert* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*
        *3.*   *Evidentiary rulings* . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*
        *4.*   *Batson ruling* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*
    *B.*   *Motion for New Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*
        *1.*   *Sufficiency of the evidence* . . . . . . . . . . . . . . . . . . . . . . . *15*

        2.      *The audio expert* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        3.      *Evidentiary rulings* . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        4.      **Batson** *ruling* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VII.   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. INTRODUCTION

The matter before the court is Defendant Terry Terrell Samuels's Motions for Judgment of Acquittal and New Trial ("Motion") (docket no. 56).

## II. RELEVANT PROCEDURAL HISTORY

On May 25, 2006, a grand jury returned a two-count Indictment against Defendant. Count 1 charges that, on March 24, 2006, Defendant distributed 20.24 grams of a mixture or substance containing cocaine base within 1,000 feet of Prescott Elementary School in Dubuque, Iowa, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 860(a). Count 2 charges that, on March 28, 2006, Defendant distributed 19.35 grams of a mixture or substance containing cocaine base within 1,000 feet of the same school, in violation of the same statutes.

On June 15, 2007, the parties consented and appeared before United States Magistrate Judge Jon S. Scoles for jury selection. (See docket nos. 33 and 42). During the jury selection process, Defendant objected to two of the government's peremptory strikes, arguing that the strikes were racially motivated, in violation of *United States v. Batson*, 476 U.S. 79 (1986). Magistrate Judge Scoles denied the objection, and, after conducting a *de novo* review, the undersigned also denied the objection.

From June 18, 2007 to June 19, 2007, the court held a jury trial. Pursuant to evidence presented at the trial, the court instructed the jury to consider the crime of aiding and abetting in addition to the crimes charged in the Indictment.[1] The jury found

---

[1] It has long been the law in the Eighth Circuit that a person may be convicted as
(continued...)

2

Defendant guilty on both counts of the Indictment.

On July 13, 2007, Defendant filed the Motion. On July 20, 2007, the government filed a resistance to the Motion ("Resistance").

The court finds the matter fully submitted and ready for decision.

## III. TRIAL EVIDENCE

### A. Early 2006

A cooperating witness, Donald Harris, testified at trial on behalf of the government. He testified that, during the early months of 2006, he purchased as many as three "eightballs"[2] of crack cocaine from Defendant approximately fifteen times, at a unit price of $100 per eightball. Harris testified that, for each of these purchases, he called the telephone number (563) 564-1123 to speak with Defendant and arrange the terms. On some of these occasions, Harris noted, Defendant's associate, Angela Nichols, delivered the crack cocaine to Harris.

Travis Rogers, another government witness with a cooperation plea agreement, offered similar testimony. He testified that in early 2006 he purchased crack cocaine from Defendant approximately three times per week, at a rate of $100 per eightball, in quantities

---

[1](...continued)
an aider and abettor even though the person is not charged with aiding and abetting in the indictment. *United States v. Thomas*, 543 F.2d 1226, 1227 (8th Cir. 1976); *United States v. Lugo-Baez*, 412 F.2d 435, 440 (8th Cir. 1969); *Latham v. United States*, 407 F.2d 1, 4 (8th Cir. 1969). "[A] jury may be instructed on the theory of aiding and abetting even though not charged in the indictment. The reason for this rule is that [the aiding and abetting statute] does not create a separate offense, it simply makes those who aid and abet in a crime punishable as principals." *United States v. Thirion*, 813 F.2d 146, 151 (8th Cir. 1987) (internal quotations and citations omitted) (modification in *Thirion*); *see also United States v. Zackery*, No. 06-1930, 2007 WL 2002544, *3 (8th Cir. July 12, 2007) (quoting *Thirion*).

[2] Corporal John Digman of the Dubuque Police Department ("Corporal Digman") testified that an "eightball" is slang for a weight of one-eighth of an ounce or 3.5 grams.

3

between one-fourth of an ounce to one ounce for subsequent resale. Rogers telephoned Defendant at (563) 564-1123 to arrange the purchases. He noted that in approximately seventy-five percent of the transactions with Defendant, Nichols delivered the crack cocaine to Rogers.

On February 16, 2006, Rogers began serving a ninety-day sentence in the Dubuque County Jail for an unrelated probation violation. Rogers attempted to contact Corporal Digman, seeking to exchange information for his release from the jail. Rogers testified that, on March 1, 2006, he met with Corporal Digman and provided him with the names of several individuals who were involved in narcotics trafficking. Rogers thereafter contacted Corporal Digman as many as nine times between March 1, 2006 and March 13, 2006, hoping to secure another meeting with him. On March 13, 2006, the two met again and Rogers provided Corporal Digman with the names of additional individuals as well as other information. On March 14, 2006, the two met for a final time, and Rogers provided still more information regarding narcotics trafficking. On March 14, 2006, Corporal Digman was able to secure Rogers's release from jail.

Between March 14, 2006 and March 30, 2006, Rogers worked as an informant and coordinated with Corporal Digman to arrange for controlled buys against various targets. During this period, Rogers completed six controlled buys on behalf of the Dubuque Police Department, including two involving Defendant on March 24, 2006 and March 28, 2006. For his efforts, law enforcement officers reduced Rogers's existing felony charge to a misdemeanor and removed Rogers from probation that he was serving as a result of an earlier violation of probation on a prior conviction.

At the time, Rogers resided at 1103 ½ Iowa Street ("Building"), Apartment 203, Dubuque, Iowa. Apartment 203 is located on the second floor of the Building.

### B. The March 21, 2006 Controlled Buy

On March 21, 2006, Rogers telephoned Defendant at (563) 564-1123, seeking to purchase crack cocaine from him. Rogers testified that Defendant told him that he could

4

purchase an ounce of crack cocaine from Nichols. By the time he reached the offices of the Drug Task Force in Dubuque, he had received a call from Nichols. Corporal Digman provided Rogers with pre-serialized currency. Rogers testified that he met with Nichols that day and purchased the ounce of crack cocaine for $800. Upon subsequent inspection, Rogers and law enforcement officers realized that the crack cocaine purchased weighed less than one ounce.[3]

### C. The March 24, 2006 Controlled Buy

On March 24, 2006, Rogers came to the offices of the Drug Task Force in Dubuque and made a recorded telephone call to Defendant at (563) 564-1123, seeking to purchase additional crack cocaine. During the call, which was recorded by law enforcement, Rogers and a speaker he identified as Defendant arranged for another purchase of crack cocaine. The recording of the call, coupled with Rogers's own testimony, revealed that he and Defendant agreed to a price of $750 for an ounce of crack. Rogers testified that Defendant gave him a "discount" on the ounce-deal because Nichols previously sold him less than the agreed-upon one ounce of crack. Pursuant to the telephone call, an investigator for the Dubuque County Sheriff's Office, Dale Snyder ("Investigator Snyder"), provided Rogers with $750 in pre-serialized currency.

Corporal Digman testified that, after the call, he drove Rogers to the Building where Defendant and Rogers had arranged for the purchase to occur. Corporal Digman stated that he placed a recording device on Rogers's body and searched Rogers for drugs and cash. Rogers then entered the Building. Corporal Digman, along with Officer Thomas Pregler ("Officer Pregler") of the Dubuque Police Department and Investigator Snyder, listened to the audio transmitter during the controlled buy. Officer Pregler and Investigator Snyder parked near to the Building to observe entries to and departures from

---

[3] No charges against Defendant in the Indictment stem from the March 21, 2006 controlled buy.

the Building.  Investigator Snyder was assigned to monitor the audio surveillance unit used during the controlled buy, while Officer Pregler drove the car.

Investigator Snyder and Rogers testified that, sometime after 11:00 a.m. on March 24 a white Dodge Charger parked in front of the Building.  Rogers observed Defendant get out of the vehicle and enter the Building.  Rogers testified that, in the hallway of the Building, he purchased an ounce of crack cocaine from Defendant for the $750 in pre-serialized currency.  He further testified that the audio transmission and recording of the controlled buy included two voices, his voice and Defendant's voice.

Rogers testified that Defendant then left the Building and returned to the white Dodge Charger in which he had arrived.  Investigator Snyder and Officer Pregler followed the white Dodge Charger to the intersection of 19th Street and Washington Street. Investigator Snyder testified that he saw Defendant exit the vehicle at the intersection.

Rogers and Corporal Digman testified that they met up immediately after the controlled buy and that Rogers gave Corporal Digman an ounce of crack cocaine.  Rogers testified that Corporal Digman searched him and no additional drugs or cash were found on his person.  Corporal Digman testified that the Iowa Division of Criminal Investigation Laboratory later confirmed that the substance purchased was 20.24 grams of crack cocaine, a Schedule II controlled substance.  Corporal Digman identified Government Exhibit 7 as the crack cocaine from the controlled buy.

### D.  The March 28, 2006 Controlled Buy

On March 27, 2006, Rogers came to the offices of the Drug Task Force in Dubuque and made a recorded telephone call to Defendant at (563) 564-1123, seeking to arrange a third controlled buy of an ounce of crack cocaine for $750 the next day. Corporal Digman testified that the same pre-buy procedures were followed: Rogers was equipped with an audio transmitter and searched for cash and contraband.  Investigator Snyder again provided Rogers with $750 in pre-serialized currency.  Corporal Digman

6

drove him to the buy location, again at the Building. Corporal Digman and Officer Pregler, as well as Investigator Snyder, were able to hear the controlled buy as it occurred via the transmitter.

Rogers testified that he received a telephone call from Defendant shortly before Defendant arrived at the Building; Rogers identified a noise in the audio recording of the controlled buy as the ringing of his cell phone for such call. Rogers testified that he saw Defendant arrive in the same white Dodge Charger and park directly in front of the Building, but a second man ("Passenger") in the car came inside the Building to conduct the controlled buy. Rogers's testimony differs in this regard from the testimony he gave to the grand jury, which suggested that Defendant personally conducted the exchange on March 28, 2006.

Investigator Snyder testified that he saw the same white Dodge Charger arrive but he could not identify the man that exited from the car and entered the Building.

Rogers testified that he purchased an ounce of crack cocaine for $750 from the Passenger on a landing inside the Building. After the Passenger returned to the white Dodge Charger, Investigator Snyder and Officer Pregler followed the white Dodge Charger to the intersection of 19th Street and Washington Street. Officer Pregler testified that, although he did not see Defendant get out of the white Dodge Charger, he saw Defendant outside of the white Dodge Charger as he and Investigator Snyder drove by it at the intersection.

Corporal Digman testified that Rogers returned to him after the controlled buy took place and Defendant had driven away. Rogers handed Corporal Digman an ounce of crack cocaine, and Corporal Digman searched him for cash or other contraband, finding none. Corporal Digman testified that the Iowa Division of Criminal Investigation Laboratory later confirmed that the substance Rogers gave to him was 19.35 grams of crack cocaine, a Schedule II controlled substance. Corporal Digman identified Government Exhibit 15 as the crack cocaine from the controlled buy.

7

### E. Stipulations

The parties stipulated to two facts. First, the Building is within 1,000 feet of Prescott Elementary School, which meets the statutory definition of a school. Second, on January 26, 1998, Defendant was convicted of distribution of marijuana in Illinois.

## IV. LEGAL STANDARDS

### A. Motion for Judgment of Acquittal

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. Fed. R. Crim. P. 29(c). It is well settled, however, that "[j]ury verdicts are not lightly overturned." *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). "A motion for judgment of acquittal should be granted only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged." *United States v. Mundt*, 846 F.2d 1157, 1158 (8th Cir. 1988); *see also United States v. Cacioppo*, 460 F.3d 1012, 1021 (8th Cir. 2006) ("A motion for judgment of acquittal should be granted only 'if there is a no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.'" (quoting *United States v. Gomez*, 165 F.3d 650, 654 (8th Cir. 1999))); *United States v. Surratt*, 172 F.3d 559, 563 (8th Cir. 1999) (holding that evidence should viewed in light most favorable to the government). The court must uphold the jury's verdict so long as "a reasonable-minded jury could have found [Defendant] guilty beyond a reasonable doubt." *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004). It is not the province of the court to weigh the evidence or evaluate the credibility of witnesses. *Id.* Those tasks are for the jury. *Id.*

Case 2:06-cr-01020-LRR   Document 62   Filed 08/30/07   Page 8 of 19

## B. *Motion for New Trial*

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. However, "[m]otions for new trials are generally disfavored, *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002), and will be granted only where 'a serious miscarriage of justice may have occurred.'" *United States v. Rice*, 449 F.3d 887, 893 (8th Cir. 2006) (quoting *United States v. Huerta-Orozco*, 272 F.3d 561, 565 (8th Cir. 2001)). Indeed, "[t]he granting of a new trial under Rule 33 is a remedy to be used only 'sparingly and with caution.'" *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004) (citing *Campos*, 306 F.3d at 579 (quoting *United States v. Lincoln*, 630 F.2d. 1313, 1319 (8th Cir. 1980))).

The evidentiary standard of review differs from the standard that is applied in the motion for judgment of acquittal.

> When a motion for new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal. The question is not whether the defendant should be acquitted outright, but only whether he should have a new trial. The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses. If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

*Lincoln*, 630 F.2d at 1319; *see also United States v. Johnson*, 474 F.3d 1044, 1051 (8th Cir. 2007) (quoting *United States v. Anwar*, 428 F.3d 1102, 1109 (8th Cir. 2005) (citing *Lincoln*)). Under Rule 33, district courts are granted broad discretion. *United States v. LeGrand*, 468 F.3d 1077, 1080 (8th Cir. 2006).

9

## V. DEFENDANT'S ARGUMENTS

Defendant offers four arguments as bases for a judgment of acquittal and a new trial. First, he argues that there was insufficient evidence to convict him under either of the counts in the Indictment. Second, Defendant contends that the court violated his rights under the Sixth Amendment and the Criminal Justice Act by refusing to authorize his attorney to hire an audio expert to testify on Defendant's behalf. Third, the court improperly admitted evidence under Federal Rules of Evidence 403 and 404(b) regarding Defendant's sales of crack cocaine in early 2006, as well as his prior conviction for distribution of marijuana. Fourth, Defendant argues that the court improperly denied his *Batson* challenge to the jury selection.

## VI. ANALYSIS

### A. Motion for Judgment of Acquittal

#### 1. Sufficiency of the evidence

Counts 1 and 2 charge Defendant with violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 860(a). Section 860(a) states that "[a]ny person who violates section 841(a)(1) of this title . . . by distributing . . . a controlled substance . . . within one thousand feet of . . . the real property comprising a public . . . elementary . . . school . . . is" subject to twice the maximum punishment and supervised release provided in § 841(b). 21 U.S.C. § 860(a). Section 841(a)(1) makes it unlawful for "any person knowingly or intentionally . . . to . . . distribute," 21 U.S.C. § 841(a)(1), "5 grams or more of a mixture of substance . . . which contains cocaine base," 21 U.S.C. § 841(b)(1)(B). The crime has three elements. First, the government must prove that the defendant intentionally distributed crack cocaine to another person. *See* 21 U.S.C. § 802(11) ("The term 'distribute' means to deliver . . . a controlled substance or listed chemical."); 21 U.S.C. § 802(8) ("The terms 'deliver' or 'delivery' mean the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether

10

or not there exists an agency relationship."). Mere distribution is sufficient to meet the statutory element. *See United States v. Fregoso*, 60 F.3d 1314, 1325 (8th Cir. 1995) (holding that distribution of controlled substance is sufficient and there is no "sale" or "for resale" requirement). Second, the government must prove that, at the time of the transfer, the defendant knew that it was crack cocaine. *See id.*; *see also United States v. Vesey*, 395 F.3d 861, 863 (8th Cir. 2005) (holding that the knowledge element was satisfied when defendant "gave [the purchaser] what he believed to be twelve or thirteen individual units of" crack cocaine). Third, the government must prove that the controlled buy occurred within 1,000 feet of a public school's real property ("School-Zone Element"). 21 U.S.C. § 860(a).

Defendant could be convicted of the crimes charged in the Indictment as an aider and abettor. "To be guilty of aiding and abetting is to be guilty as if one were a principal of the underlying offense. Aiding and abetting is not a separate crime but rather is linked to the underlying offense and shares the requisite intent of the offense." *United States v. Roan Eagle*, 867 F.2d 436, 445 (8th Cir. 1989). The Eighth Circuit Court of Appeals has described aiding and abetting as having three elements: "1) that the defendant associated himself with the unlawful venture; 2) that the defendant participated in it as something he wished to bring about; and 3) that the defendant sought by his actions to make it succeed." *United States v. Lanier*, 838 F.2d 281, 284 (8th Cir. 1988); *see also United States v. Rodriguez*, 812 F.2d 414, 416 (8th Cir. 1987) (stating the three elements).

There is sufficient evidence that Defendant committed the crime charged in Count 1 of the Indictment. As to the knowledge element, Rogers testified that he called Defendant on March 24, 2006 and asked to purchase crack cocaine; Defendant told Rogers that he would give Rogers a discount because he shorted him on the amount delivered on March 21, 2006. *See Vesey*, 395 F.3d at 863 (holding that knowledge element satisfied when defendant "gave [purchaser] what he believed to be twelve or thirteen individual

11

units of" crack cocaine); *United States v. Matlock*, 109 F.3d 1313, 1318 (8th Cir. 1997) (holding that wiretapped phone conversations revealed knowledge of controlled substance). As to the distribution element, Rogers testified that, during the pre-controlled buy telephone call, Rogers agreed to meet Defendant at the Building. Then, when they met at the Building, Defendant gave him approximately one ounce of crack cocaine for $750, the amount and price they had agreed to during the pre-controlled buy telephone call. *See* 21 U.S.C. § 802(8). After Defendant drove away in the white Dodge Charger, Rogers brought the package of crack cocaine to Corporal Digman, who sent the package to the Division of Criminal Investigation Laboratory where chemists later determined that the package contained 20.24 grams of crack cocaine. *See Vesey*, 395 F.3d at 863. Rogers, Investigator Snyder and Officer Pregler testified that they saw a white Dodge Charger park in front of the Building. Rogers further testified that he recognized Defendant from prior drug transactions. He watched Defendant get out of the white Dodge Charger, enter the Building, complete the controlled buy, leave the Building and get back into the white Dodge Charger. Investigator Snyder testified that he then followed the white Dodge Charger and identified Defendant when Defendant exited the vehicle.

Since the parties stipulated as to the location and status of Prescott Elementary School, it is beyond peradventure that a reasonable jury could have found the School-Zone Element satisfied. Therefore, the School-Zone Element also has support from the evidence to satisfy the "reasonable-minded jury" requirement, *Hayes*, 391 F.3d at 961, and there is no basis to grant a judgment of acquittal as to Count 1 of the Indictment.

A reasonable-minded jury could also have found Defendant guilty under Count 2 of the Indictment, either as principal or as an aider and abettor. The evidence that Defendant is liable as a principal is strong. As to the knowledge element, Rogers testified that he called Defendant on March 27, 2006 to arrange for a third purchase of crack cocaine at the same location. Defendant offered Rogers the same deal of $750 for an ounce of crack cocaine. *See Vesey*, 395 F.3d at 863; *Matlock*, 109 F.3d at 1318.

12

As to the distribution element, Rogers testified that he received a telephone call from Defendant shortly before Defendant arrived, as agreed, at the Building; Rogers identified a noise in the audio recording of the controlled buy as the ringing of his cell phone for such call. Rogers testified that shortly thereafter he saw Defendant arrive in a white Dodge Charger and park directly in front of the Building, but the Passenger came inside. Rogers testified that he purchased an ounce of crack cocaine for $750 from the Passenger on a landing inside the Building. *See* 21 U.S.C. § 802(8). Corporal Digman testified that the substance Rogers gave to him was 19.35 grams of crack cocaine. *See Vesey*, 395 F.3d at 863.

As explained above, it is beyond doubt that a reasonable jury could have found the School-Zone Element satisfied. Therefore, the School-Zone Element also has support from the evidence to satisfy the "reasonable-minded jury" requirement, *Hayes*, 391 F.3d at 961, and there is no basis to grant a judgment of acquittal as to Count 2 of the Indictment.

## 2. *The audio expert*

Defendant asserts that the court violated his Sixth Amendment rights, and his rights under the Criminal Justice Act, 18 U.S.C. § 3006A, by denying his motion for funds to employ an expert witness to identify the speaker during the first controlled buy. In addition to the reasons stated in the court's Order of May 30, 2007 ("Audio Expert Order") (docket no. 29), denying such motion, the court shall dismiss the motion for a judgment of acquittal under the following analysis.

Congress enacted § 3006A to promote the Sixth Amendment's guaranty of a defendant's right to assistance of counsel. *See* 18 U.S.C. § 3006(A)(a)(1)(H); *see also United States v. Thurmon*, 413 F.3d 752, 755 (8th Cir. 2005) (holding that claim of an improper denial of necessary expert "is more appropriately viewed as an argument that the district court violated the Criminal Justice Act" than as a Sixth Amendment ineffective assistance claim). Subsection 3006A(e)(1) permits a district court to authorize funding of

13

"expert, or other services necessary for adequate representation" upon request from an indigent defendant. *Id*. at § 3006(A)(e)(1). The Eighth Circuit Court of Appeals has explained that a defendant "must do more than allege the services would be helpful, rather he must show they are necessary to afford him an adequate opportunity to present his claims fairly within the adversary system." *United States v. Ross*, 210 F.3d 916, 921 (8th Cir. 2000) (internal quotations omitted) (quoting *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985)).

Defendant's request for an audio expert does not meet this standard. As the Eighth Circuit Court of Appeals explained in *Thurmon*, because a defendant could present a defense using witnesses familiar with his voice, such as his friends, the court does not abuse its discretion in refusing advance authorization for audio expert services. *Thurmon*, 413 F.3d at 756-57. Based on Thurmon's ability to call witnesses to testify whether or not it was his voice on the audio recordings and to cross- examine the government's witnesses who testified that it was his voice on the audio recordings, the Eighth Circuit Court of Appeals held that the defendant failed to show how a voice identification expert was necessary for a fair trial or how it would aid his defense. *Id*. Here, the same less costly methods were available to Defendant. Defendant was free to call any witness who is familiar with his voice and to cross-examine the government's witnesses who testified about the voice on the audio recordings.

Even assuming the denial were improper, Defendant's remedy would not be a judgment of acquittal but a new trial. *See, e.g., United States v. Durant*, 545 F.2d 823, 829 (8th Cir. 1976) (ordering new trial after reversal of district court's denial of defendant's motion to employ fingerprint expert); *Bradford v. United States*, 413 F.2d 467, 475 (5th Cir. 1969) (ordering new trial after reversal of district court's denial of defendant's motion to employ fingerprint and handwriting experts). Therefore, the motion for judgment of acquittal on this basis shall be denied.

14

### 3.    *Evidentiary rulings*

Defendant argues that evidence regarding any prior conviction and his prior conduct with Rogers and Harris should have been excluded from the trial.  The court addressed these matters in its Order of June 15, 2007 ("Evidentiary Order") (docket no. 41), denying Defendant's motion to exclude evidence.  For the reasons stated in the Evidentiary Order, Defendant's argument for a judgment of acquittal on this basis is denied.  In any case, Defendant's remedy is not a judgment of acquittal but a new trial.  *See, e.g., United States v. Held*, 11 F.App'x 664, 664 (8th Cir. 2001) (stating that remedy for evidence improperly excluded under Fed. R. Evid. 404(b) is new trial); *United States v. McNeil*, 184 F.3d 770, 777 (8th Cir. 1999) (same); *United States v. Brown*, 148 F.3d 1003, 1009 (8th Cir. 1998) (same).  Accordingly, the court concludes that Defendant is not entitled to relief on this ground.

### 4.    **Batson** *ruling*

Defendant argues that Magistrate Judge Scoles's denial of his *Batson* objection warrants a judgment of acquittal.  Defendant's remedy in this regard, however, is not a judgment of acquittal; rather a successful *Batson* challenge would entitle Defendant to a new trial.  *See, e.g., Miller v. United States*, 135 F.3d 1254, 1257 (8th Cir. 1998) (stating that upon a successful *Batson* challenge, defendant has a right to a new trial); *United States v. Wilson*, 884 F.2d 1121, 1121 (8th Cir. 1989) (holding that a successful *Batson* challenge entitled defendant to new trial).

## B.  Motion for New Trial

### 1.    *Sufficiency of the evidence*

A review of the evidence reveals that Defendant is not entitled to a new trial on sufficiency of the evidence grounds.  As explained in the acquittal analysis, *supra*, the evidence was strong that Defendant distributed crack cocaine during the two controlled buys.  The government presented audio recordings of Defendant's phone calls with Rogers

Case 2:06-cr-01020-LRR    Document 62    Filed 08/30/07    Page 15 of 19

arranging the controlled buys, as well as audio recordings of the controlled buys with Rogers. Officer Pregler and Investigator Snyder corroborated Rogers's testimony regarding the controlled buys. Investigator Snyder identified Defendant as he exited the white Dodge Charger subsequent to the first controlled buy. Officer Pregler identified Defendant near the white Dodge Charger shortly after it had come to a stop subsequent to the second controlled buy. The combined evidence exceeds the standard for a new trial. *See United States v. Watkins*, 486 F.3d 458, 464 (8th Cir. 2007) (holding that the discrepancies and inconsistencies in a witness's testimony were insufficient, in light of corroborating evidence, to meet the standard for new trial); *United States v. Bass*, 478 F.3d 948, 952 (8th Cir. 2007) (finding trial court abused its discretion by granting new trial based on informant's perjured testimony where other evidence existed to support guilty verdict); *Johnson*, 474 F.3d at 1051 (law enforcement investigation corroborating witness testimony sufficient to deny Rule 33 motion for new trial); *LeGrand*, 468 F.3d at 1080 (informant's testimony regarding narcotics distribution corroborated in part by law enforcement officers). Put differently, the evidence of Defendant's guilt defeats any suggestion that "a serious miscarriage of justice may have occurred." *Huerta-Orozco*, 272 F.3d at 565; *see also Rice*, 449 F.3d at 893.

### 2. The audio expert

For the reasons stated in the acquittal analysis, *supra*, and the Audio Expert Order, Defendant's Motion on this basis shall be denied, and the court finds that no serious miscarriage of justice occurred, *see Huerta-Orozco*, 272 F.3d at 565; *see also Rice*, 449 F.3d at 893.

### 3. Evidentiary rulings

For the reasons stated in the Evidentiary Order, Defendant's Motion on this basis is denied, and the court finds that no serious miscarriage of justice occurred, *see Huerta-Orozco*, 272 F.3d at 565; *see also Rice*, 449 F.3d at 893.

16

### 4. Batson *ruling*

The Supreme Court has held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the [government's] case against a black defendant." *Batson*, 476 U.S. at 89. A defendant raising a *Batson* objection to a prosecutor's challenge must, as a preliminary matter, make two showings. First, a defendant "must show that he is a member of a cognizable racial group, . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Id*. at 96. Second, "a defendant must show that" the challenges "and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Id*. Relevant circumstances include a "pattern of strikes against black jurors," and "the prosecutor's questions and statements during voir dire examination and in exercising his challenges" bear on whether there was a discriminatory purpose. *Id*. at 97. However, "[o]nce the defendant makes a prima facie showing, the burden shifts to the [government] to come forward with a race neutral explanation for challenging the black jurors." *Id*. The "explanation need not rise to the level justifying exercise of a challenge for cause," but such explanation may not be based "on the assumption—or [the prosecutor's] intuitive judgment—that [the black jurors] would be partial to the defendant because of their shared race." *Id*.

Defendant's *Batson* challenge does not make a prima facie case. Defendant is African-American, and the government employed its first two peremptory challenges to remove two of the three African-Americans among the venirepersons. *Id*. at 96. However, based on the jurors' answers to the questions during voir dire, the court does not infer from these challenges that the government did so with a discriminatory purpose. *But see United States v. Battle*, 836 F.2d 1084, 1085 (8th Cir. 1987) (holding that

17

government's challenge of five of the seven African-American venirepersons raised prima facie inference of discriminatory purpose); *see also United States v. Hughes*, 880 F.2d 101, 103 (8th Cir. 1989) (finding that peremptory challenges of three of six African-American venirepersons amounted to prima facie inference of discriminatory intent); *United States v. Johnson*, 873 F.2d 1137, 1139 (8th Cir. 1989) (holding that disproportionate challenges of African-American venirepersons raised prima facie inference of discriminatory purpose); *Roan Eagle*, 867 F.2d at 441 (holding that peremptory challenge of sole American Indian venireperson established prima facie inference of discriminatory intent).

Even, if Defendant established a prima facie case, the court finds that the government's proffered race-neutral reasons more than satisfy its burden. As an initial matter, the court is convinced by the record that the government did not know that the first stricken African-American venireman was in fact African-American. The government explained, convincingly, that it struck such venireperson because he had an uncle who died of an overdose and he believed that drug use was a matter of personal choice. *See United States v. Maxwell*, 473 F.3d 868 (8th Cir. 2007) (holding that dismissal of venireperson who appeared to favor drug legalization was race-neutral); *United States v. Moreno*, 217 F.3d 592, 594 (8th Cir. 2000) (holding dismissal of potential juror on basis of prior contact with drugs was race-neutral). As to the second African-American stricken, the government explained that he stated in his questionnaire that law enforcement is not fair to African-Americans. *See United States v. Crawford*, 413 F.3d 873, 875 (8th Cir. 2005) ("A juror's bias or dissatisfaction with law enforcement is a race-neutral reason for striking the juror."); *United States v. Moore*, 149 F.3d 773, 780 (8th Cir. 1998) (holding that dismissal of venireman based on bias towards police was race-neutral). Moreover, the venireperson stated that his nephew had been treated unfairly in his plea to a narcotics crime. *See United States v. Day*, 949 F.2d 973, 979 (8th Cir. 1991) (finding satisfactory

18

government's explanation that venireperson had nephew treated unfairly at criminal trial and by police); *Crawford*, 413 F.3d at 875 ("There is no *Batson* violation when a juror is dismissed because the juror's relatives have been prosecuted or convicted of a crime . . . ."). Perhaps most disturbingly, he stated that he would require "overwhelming" evidence to convict a defendant. *See United States v. Purkey*, 428 F.3d 738, 751 (8th Cir. 2005) (holding that a potential juror was properly excluded on the basis that he would not apply evidentiary standard required under the law). The court has further confidence in the race-neutral reasons propounded by the government because the third African-American venireperson was not challenged and served as an alternate juror; he responded differently to similar questions regarding law enforcement and narcotics posed by the government.

Therefore, the court finds that no serious miscarriage of justice occurred, *see Huerta-Orozco*, 272 F.3d at 565; *see also Rice*, 449 F.3d at 893, and Defendant's motion for a new trial on this basis is denied.

## VII. CONCLUSION

**IT IS SO ORDERED:**

The court **DENIES** Defendant Terry Terrell Samuels's Motions for Judgment of Acquittal and New Trial (docket no. 56).

**DATED** this 30th day of August, 2007.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

19